UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | RENEE MARIE THORPE, | : | Chapter 12 |
| | | : | |
| | Debtor | : | Bky. No. 13-15267 ELF |

# M E M O R A N D U M

## I.  INTRODUCTION

Bankruptcy courts are not courts of general jurisdiction able to resolve every dispute that may affect a bankruptcy debtor during the pendency of a bankruptcy case. A fundamental principle of federal jurisprudence is that federal courts are courts of limited jurisdiction. Bankruptcy court jurisdiction constitutes a strictly circumscribed subset of that limited federal court jurisdiction.  Further, even when bankruptcy jurisdiction attaches, it tends to "wane" after the confirmation of a bankruptcy plan. See Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 294 (3d Cir. 2012).

In this case, years after the confirmation of her chapter 12 plan, the Debtor initiated a contested matter styled "Debtor's Objection to JPMorgan Chase Bank, N.A. Escrow: Taxes and Insurance Statement Dated April 21, 2018" (Doc. # 678) ("the Objection").  The Objection requests that this court resolve a post-confirmation mortgage servicing dispute that arose between the Debtor and JP Morgan Chase Bank N.A. ("JPMorgan"), a mortgage holder on the Debtor's residence.

Undoubtedly, the dispute is a real one and its outcome is important to both parties. However, the Debtor did not provide for JPMorgan's claim in her confirmed chapter 12 plan and the present dispute will have no discernible impact on her almost fully administered bankruptcy

case.

Accordingly, for the reasons stated below, I will dismiss the Objection for lack of subject matter jurisdiction.

## II.  HISTORY OF THE CASE

### A.  General Background

This chapter 12 family farm bankruptcy case was filed on June 13, 2013.  A plan was confirmed on January 23, 2014 and a post-confirmation modified plan was approved on November 14, 2014.

In seeking bankruptcy relief, the Debtor's goal was to implement a rehabilitation plan to prevent foreclosure of her family farm.  Although the Debtor succeeded in confirming a chapter 12 plan, she ultimately was unsuccessful in her rehabilitation efforts and, pursuant to the terms of her confirmed plan, the farm was sold to a third party via a bankruptcy court auction.  See In re Thorpe, 540 B.R. 552 (E.D. Pa. 2015).

After the sale, the main creditor secured by the farm property, Lititz Properties, Inc. ("Lititz"), asserted that a deficiency claim remained, secured by a second property owned by the Debtor – her residence.  The Debtor disputed that her residence was subject to any further debt to Lititz and pressed an objection to Lititz's proof of claim.  The parties agreed to mediate this dispute and later reached a settlement ("the Lititz Settlement").

Pursuant to the Lititz Settlement, the Debtor agreed to: (a) accept a settlement offer in a then-pending state court action in which she asserted an affirmative claim against her casualty insurer; and (b) pay 65% of those settlement proceeds to Lititz.  The remaining 35% of the

Case 13-15267-elf    Doc 702    Filed 01/17/19    Entered 01/17/19 16:04:14    Desc Main
Document    Page 3 of 14

insurance settlement proceeds was (and continues to be) the subject of a dispute.

At the time of the Lititz Settlement, the attorney hired by the Debtor to represent her in the insurance litigation asserted that he was entitled to those proceeds pursuant to his contingent fee agreement. The Debtor disputed this, asserting that the attorney was entitled to neither a contingent fee nor any award on a *quantum meruit* basis. In light of the uncertainty regarding the proper disposition of the proceeds, in the Lititz Settlement, Lititz agreed to accept a fixed (relatively modest) portion of the disputed 35% in the event the Debtor prevailed in her dispute with the attorney.

Based on the settlement terms described above, Lititz released its claim against the Debtor's remaining (residential) real property. The settlement was approved by this court. See In re Thorpe, 563 B.R. 576, 581–83 (Bankr. E.D. Pa. 2017), adopted sub nom. U.S. Tr. v. Thorpe, 2017 WL 3084388 (E.D. Pa. July 20, 2017), vacated in part on other grounds and remanded sub nom. In re Thorpe, 2018 WL 6068445 (3d Cir. Nov. 20, 2018) (nonprecedential).

The dispute regarding the entitlement to the disputed 35% of the insurance settlement proceeds remains unresolved, the matter having recently been remanded by the Court of Appeals to the District Court and by the District Court to this court. See In re Thorpe, 2018 WL 6068445 (3d Cir. Nov. 20, 2018) (nonprecedential); Bky. No. 13-15265, Doc. # 695. Resolution of that dispute is the primary reason that this bankruptcy case remains open. Once the insurance proceeds dispute is resolved with finality, it will be possible to determine whether Lititz will receive a further distribution in connection with its proof of claim. Thereafter, it appears that the only issue remaining to complete administration of this case is whether the Debtor is entitled to a discharge pursuant to 11 U.S.C. §1228.

### B. Background as to JPMorgan

JPMorgan holds the first mortgage on the Debtor's residence.

Counsel for JPMorgan entered an appearance in the case on December 14, 2014, but otherwise did not participate in the plan confirmation process.

Both the plan confirmed by order dated January 23, 2014 and the modified plan approved on November 14, 2014 provided that the Debtor will make payments "directly to [JPMorgan] **outside of the plan**, according to the original contract terms, with no modification of contract terms." (Fourth Amended Plan, Doc. # 118) (emphasis added); (Fifth Amended Plan, Doc. # 286) (emphasis added). The only qualification of this treatment is that the Debtor reserved the right to apply for a loan modification.

On July 8, 2015, JPMorgan filed a proof of claim for $193,185.05, secured by the Debtor's residence, with pre-petition arrears of $2,382.11. Because this claim was filed after plan confirmation, it is difficult to discern its purpose.

On April 26, 2016, JPMorgan filed a motion requesting court approval of a loan modification and stating that the new monthly payment for principal and interest would be $1,008.35. The motion did not discuss whether the modified loan required the Debtor to pay a monthly escrow for taxes and insurance and, if so, the initial amount of the monthly escrow.

By order dated June 1, 2016, I granted the loan modification motion, authorized the Debtor to enter into the loan modification agreement described in the motion and, to the extent that relief from the automatic stay was necessary for the parties to enter into the transaction,

granted JPMorgan such relief.  (Doc. # 578) (emphasis in original).[1]

### C. The Pending Contested Matter

**1.**

The present dispute is an outgrowth of an earlier motion filed by JPMorgan for relief from the automatic stay ("the Stay Relief Motion").

On January 19, 2018, pursuant to 11 U.S.C. §362(d), JPMorgan filed the Stay Relief Motion, alleging that the existence of a five (5) month default in monthly payments, totaling $8,693.45, denied it adequate protection.  The Debtor filed a response denying the existence of a default, stating that the mortgage account was "current under a loan modification agreement with [JPMorgan]." (Debtor's Response to JPMorgan Motion for Relief from the Automatic Stay ¶ 8) (Doc. # 663 at 1).

---

[1]   At the risk of getting ahead of the jurisdictional analysis regarding the Objection, a brief observation is appropriate regarding the 2016 order approving the loan modification.

In a chapter 12 or chapter 13 case in which the Debtor is not providing for a cure or payoff of a secured debt and the debt is being addressed "outside the plan," after confirmation of a plan, there is a legitimate question whether the debtor and secured party need court approval to renegotiate and modify the repayment terms of the secured debt.  However, in my experience, and as the approval order in this case suggests, the parties (primarily the lender) regularly express concern that the loan modification process may run afoul of the automatic stay, 11 U.S.C. §362(a).

Candidly, while I have my doubts that such loan modification negotiations violate the automatic stay, I appreciate that creditors wish to err on the side of caution with respect to the automatic stay (a caution that bankruptcy courts generally recommend) and that debtors wish the court to remove any barriers to creditor consideration of a requested loan modification. Thus, I conceptualize a typical motion requesting  "approval" of a loan modification in an individual chapter 7, chapter 12 or chapter 13 case not as one requesting judicial approval of the loan modification itself, but rather as a request that the court determine that the debtor and the creditor may engage in the loan modification process and consummate an agreed modification without violating the automatic stay and without interfering the administration of the bankruptcy case.

On July 18, 2018, the parties reported a settlement of the Stay Relief Motion and followed up by filing a stipulation. In the stipulation, the Debtor acknowledged a post-petition delinquency of $6,242.21 and agreed to cure the delinquency by adding $520.19 to her regular monthly mortgage payment over the following eleven (11) months.[2]

**2.**

The Debtor filed the Objection presently before the court on September 15, 2018 and self-scheduled a hearing on October 25, 2018.

In the Objection, the Debtor alleges that, in connection with the Stay Relief Motion settlement negotiations, she learned that JPMorgan intended to increase her regular monthly mortgage payment from $1,738.69 to $2,316.12, effective July 2018. The Debtor disputes the propriety of the payment increase and requests that the court "determin[e] . . . the correct amount of the regular monthly mortgage payment." (Objection ¶ 10).

**3.**

On September 17, 2018, I entered an order raising the question whether this court has subject matter jurisdiction to determine the proper amount of the Debtor's monthly mortgage

---

[2] It is unclear whether the terms of the settlement are consistent with the Debtor's defense to the Stay Relief Motion. i.e., her assertion that post-petition delinquency was non-existent due to the loan modification.

payment on JPMorgan's claim.³ The order directed the parties to submit memoranda of law addressing the issue of jurisdiction on or before October 18, 2018, one (1) week prior to the hearing scheduled on the Objection.

At the request of the parties, I continued the hearing on the Objection and extended the deadline three (3) times for the parties to file their memoranda of law.

The parties made their third extension and continuance request on December 5, 2018. By Order dated December 6, 2018, I extended the deadline to file the memoranda of law to December 31, 2018 and stated that "[n]o further extensions shall be granted." The Order also continued the hearing on the Objection to January 9, 2019. At the parties' request, the January 9, 2019 hearing was continued to January 23, 2019.

Although the January 9, 2019 hearing was continued, a further extension for filing the memoranda was not granted. On January 2, 2019, JPMorgan filed a short response to the Objection which does not discuss the court's subject matter jurisdiction. On January 4, 2019, the Debtor filed a memorandum of law in support of her position. In that tardy submission, the Debtor argues that the court has jurisdiction to consider the merits of the Objection.⁴

---

³ It is black letter law that a federal court, as a court of limited jurisdiction, has an independent duty to assure itself that it has jurisdiction over a case before reaching the merits. E.g., U.S. v. Weatherspoon, 696 F.3d 416, 421 (3d Cir. 2012); McIntyre v. Nationwide Mut. Fire Ins. Co., 2001 WL 893697, at *1 (E.D. Pa. Aug. 6, 2001); see also Thomas v. City of Philadelphia, 2019 WL 92735, at *1 (3d Cir. Jan. 3, 2019) (nonprecedential) ) ("it is axiomatic that federal courts must always assure themselves that they have subject matter jurisdiction, and that jurisdiction can be challenged at any time during the life of a case").

⁴ In light of the absence of any submission by JPMorgan and the late submission by the Debtor, it would be within my discretion to evaluate the court's jurisdiction without input from either party. However, considering that the Debtor's submission was only a few days late and offers a

(continued...)

### III.  DISCUSSION

In 2017, in connection with the litigation over the entitlement to the remaining 35% of the insurance settlement proceeds, I had occasion to address the scope of a bankruptcy court's subject matter jurisdiction under 28 U.S.C. §1334(a) and (b) following confirmation of a chapter 12 plan.  See In re Thorpe, 563 B.R. 576, 591–94 & n.26.[5]

For brevity's sake, I incorporate that discussion and merely summarize its critical jurisdictional principles:

> (1) Regardless whether a matter is considered core or non-core under 28 U.S.C. §157(b), the existence or lack of bankruptcy subject matter jurisdiction depends on whether the outcome of a dispute is sufficiently "related to" the bankruptcy case to warrant the exercise of bankruptcy jurisdiction.[6]
>
> (2) A legal dispute is sufficiently "related to" a bankruptcy case if its outcome could conceivably have any effect on the bankruptcy estate which, ordinarily, means that the litigation will affect the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid.[7]

---

[4](...continued)
thoughtful, albeit unconvincing, analysis, I will address the Debtor's jurisdictional argument below.

[5]  While the recommendation to the district court that accompanied the Memorandum cited above was adopted by the District Court and then reversed on the merits by Court of Appeals, nothing in either decision suggests that there was error in the Memorandum's jurisdictional analysis.

[6]  Another way to express this principle is that "every core proceeding is related, but not every related proceeding is core and that a matter must at least be related to the bankruptcy for the bankruptcy court to exercise any type of subject matter jurisdiction."  In re Universal Mktg., Inc., 459 B.R. 573, 579 (Bankr. E.D. Pa. 2011).

[7]  The "related to" test stated in the text is derived from Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).  In the 2017 Thorpe Memorandum, I held that the Pacor test should be employed in evaluating post-confirmation subject matter jurisdiction in a chapter 12 case, rather than the "close nexus" test enunciated in the chapter 11 case, In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004).  See Thorpe, 563 B.R. at 593 n.26.  On its face, the Resorts test may be slightly more stringent than the Pacor

(continued...)

In the matter <u>sub judice</u>, the key factor in the jurisdictional analysis is that the Debtor chose not to provide for JPMorgan's claim in her confirmed chapter 12 plan.

The Debtor's plan does not cure a pre-petition default, <u>see</u> 11 U.S.C. §1322(b)(5), pay off JPMorgan's allowed secured claim, <u>see</u> 11 U.S.C. §1325(a)(5)(B), or surrender the property securing the claim, <u>see</u> 11 U.S.C. §1325(a)(5)(C). The plan also does not establish a payment schedule or include any provision that affected or governed the payment of the debt to JPMorgan. Rather, the plan expressly states that the claim would be addressed "outside the plan," according to the parties' "contract terms." In other words, "[b]y stating only that [the] Debtor would make any payments to [JPMorgan] directly, [the] Debtor chose not to handle the . . . debt through her bankruptcy." <u>In re Dukes</u>, 909 F.3d 1306, 1312–13 (11th Cir. 2018). The plan essentially returned the Debtor-JPMorgan relationship to its pre-bankruptcy status. Accordingly, there is no nexus between the Debtor's confirmed plan and the present dispute concerning the proper amount of the monthly instalment the Debtor is obligated to pay JPMorgan.

Generally, the bankruptcy court may not adjudicate a post-confirmation dispute regarding the parties' rights with respect to a secured claim not provided for by the plan. While there may be chapter 12 or chapter 13 cases in which a post-confirmation dispute concerning a secured claim that is not provided for in the debtor's plan may have a meaningful impact ongoing case administration,[8] in this case, any impact that resolution of the Debtor-JPMorgan dispute may

---

[7](...continued)
test. Because I find that this matter does not satisfy <u>Pacor</u>, <u>a fortiori</u> it does not satisfy <u>Resorts</u>.

[8]    For example, if a debtor establishes that the outcome of the dispute with a creditor whose claim was not provided for in a confirmed plan will nonetheless assist or impair the debtor's ability to
(continued...)

have on case administration is too insubstantial to justify the exercise of bankruptcy jurisdiction. Other than certain payments by the Debtor to the chapter 12 trustee contemplated by the plan and the resolution of the disputed entitlement to the 35% of the insurance settlement proceeds (with the potential additional distribution to Lititz), it appears that case administration has been completed with respect to all assets to be collected and administered under the plan. Resolution of the Debtor's dispute with JPMorgan would not affect any of the outstanding case administration issues.

This case is substantially similar (although not identical) to In re Boltz-Rubinstein, 574 B.R. 542 (Bankr. E.D. Pa. 2017).

In Boltz-Rubinstein, the Debtor's plan did not provide for the claim held by a creditor holding a mortgage on her residence. After the debtor completed performing her chapter 13 plan, she initiated an adversary proceeding asserting various claims against the creditor. Among those claims were causes of action for breach of contract, fraud, and violation of consumer protection statutes. I held that the debtor's claims for monetary relief, "all of which arose post-petition, can no longer affect a bankruptcy case that has been fully administered and is ready to be closed." Boltz-Rubinstein, 574 B.R. at 553. I dismissed those causes of action for lack of subject matter jurisdiction.

Similarly, here, in a case which is close to being fully administered, I fail to see how determining the proper amount of the Debtor's ongoing monthly instalment obligation to

---

[8](...continued)
perform the remaining obligations under the confirmed plan, perhaps such a showing supports the exercise of "related to" jurisdiction under 28 U.S.C. §1334(b) and 28 U.S.C. §157(b) – subject to potential abstention pursuant to 28 U.S.C. §1334(c). In this case, the facts do not support a finding that the court has "related to" jurisdiction under 28 U.S.C. §1334(b).

JPMorgan, on a debt not provided for by the plan, affects case administration in any way.

In urging the court to find and exercise jurisdiction, the Debtor latches on to the prior settlement of JPMorgan's Stay Relief Motion and the impact that her payment dispute might have on the grant of stay relief in the future. The Debtor seeks to distinguish <u>Boltz-Rubinstein</u> because the claims at issue there were indisputably non-core while, in this case, her dispute with JPMorgan is linked to her settlement of JPMorgan's Stay Relief Motion, a core matter. <u>See</u> 28 U.S.C. §157(b)(2)(G). The Debtor suggests that the bankruptcy court has jurisdiction to decide the Objection because the issues involved are interrelated to stay relief under 11 U.S.C. §362(d), a matter over which this court indisputably has jurisdiction.

These arguments have some appeal in the abstract, but are not persuasive in this case.

The Objection is not a "core" motion for relief from the automatic stay. In effect, the Objection is merely a request for declaratory relief regarding the respective rights of the Debtor and JPMorgan in connection with a secured debt that was not provided for by the plan. The matter may be categorized fairly as non-core, just like the claims in <u>Boltz-Rubinstein</u>.

In making that last point, I recognize the danger of being hypertechnical. I appreciate that the subject matter of the Objection involves an issue that may be relevant if JPMorgan were to seek relief from the automatic stay in the future and that stay relief request is a core proceeding. Thus, if I believed that JPMorgan were likely to seek stay relief **and** that, in order to decide whether to grant stay relief, it would be necessary to resolve the payment dispute between the Debtor and JPMorgan, I might conclude that the court had "related to" jurisdiction over the Objection. But I am not convinced that it will be necessary or appropriate for the bankruptcy court to resolve the issue raised by the Objection – even in the context of a possible future stay

relief proceeding.

At bottom, the Debtor fails to appreciate the purpose of the automatic stay and the related impact of her decision not to provide for JPMorgan's claim in her plan.

In a rehabilitation bankruptcy case, a central purpose of the automatic stay is to give the debtor a breathing spell and maintain the status quo while the debtor invokes the available tools afforded by the Bankruptcy Code and attempts to formulate and confirm a plan that adjusts, and presumably lowers or restructures, the debtor's debts. See, e.g., Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir. 1995); In re Clinton Centrifuge, Inc., 72 B.R. 900, 906–07 (Bankr. E.D. Pa. 1987). Once a plan has been confirmed, that purpose largely has been served and the protections of the automatic stay need remain in place only to permit the debtor to implement the confirmed plan by performing his or her obligations thereunder. In re Stuart, 402 B.R. 111, 124 n.17 (Bankr. E.D. Pa. 2009). One might say that a creditor's pre-petition rights have been superseded by the terms of the confirmed plan and that "the stay will remain in place so long as the debtor performs his or her obligations under the confirmed plan." Id.

These principles are muted substantially with respect to a creditor whose claim is not provided for in the confirmed plan. "[O]rdinarily, no valid rehabilitative or reorganization purpose is served by continuing to restrain [a creditor whose claim has not been provided for in a confirmed plan] from collecting its claim by realizing its security" in connection with applicable nonbankruptcy law. Id. In such cases, if the debtor is not in default or has defenses to the creditor's claim, those issues may be raised in the nonbankruptcy forum. Thus, as a general rule, courts have long held that "[i]f a confirmed plan does not 'provide for' a secured claim, the holder of the claim ordinarily is entitled to obtain relief from the automatic stay for cause under

11 U.S.C. § 362(d)." Stuart, 402 B.R. at 123–24 (citing cases); accord In re Bilinski, 1998 WL 721083, at *3 (E.D. Pa. Oct. 9, 1998) (dictum); In re Chedick, No. 95-01096, 1996 WL 762329, at *7 (Bankr. D.D.C. Mar. 22, 1996); In re Sacerdote, 74 B.R. 487, 491 (Bankr. E.D. Pa. 1987).[9]

Returning to the posture of this case, I cannot envision any circumstances in which I would not grant JPMorgan (which alleges that it is not receiving adequate protection) relief from the automatic stay.

The plan does not provide for JPMorgan's claim, case administration is all but complete, and resolution of the dispute between JPMorgan and the Debtor regarding the proper amount of the ongoing monthly mortgage payment will not impact the remaining tasks needed to complete bankruptcy case administration. These circumstances effectively "de-link" the Objection from any future stay relief motion, leaving the Objection as a stand-alone request for a determination of the parties' rights on a claim that the Debtor chose to address outside the bankruptcy process. Accordingly, I find that there is no basis for the bankruptcy court to exercise jurisdiction to resolve the dispute described in the Objection.

### IV. CONCLUSION

For the reasons stated above, the Objection will be dismissed for lack of subject matter jurisdiction. An appropriate order follows.

---

[9] That said, I recognize that there may be circumstances in which it may be appropriate to deny stay relief to a secured creditor whose claim is not provided for in a confirmed plan but who has been afforded adequate protection. This case does not involve such a situation so I need not discuss the factual parameters in which such an outcome would be appropriate.

Date: January 17, 2019  _____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**