IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

RENEE M. THORPE,                               :   CHAPTER 12
                                               :
    Debtor                                     :   BANKRUPTCY NO. 13-15267-elf


### MEMORANDUM OF LAW ON QUANTUM MERUIT AWARD FOR JOSEPH MIRARCHI

This memorandum is filed by Attorney Herbert McDuffy, Jr., Esquire pursuant to an Order from the Bankruptcy Court for the Eastern District of Pennsylvania requiring input on the issue of fees in *quantum meruit* for former Attorney Joseph Q. Mirarchi under the theory of Quantum Meruit.

**SUMMARY**

,

Joseph Mirarchi, a recently disbarred attorney who previously represented Renee and Dale Thorpe (the "Thorpes") in an insurance claim against Nationwide Insurance Company, filed a motion in the Bankruptcy Court to recover legal fees from that insurance case under contract and quantum meruit theories. The Bankruptcy Court concluded that Mirarchi had no contractual right to recover fees and that his wrongful conduct barred him from recovery under the theory of quantum meruit. The District Court adopted the Bankruptcy Court's recommendation in an order denying his motion. Mirarchi appealed to the Third Circuit Court of Appeals. The Third Circuit agreed with the Bankruptcy and District Courts that that Mirarchi had no valid contractual claim to the disputed fee. However Appeals Court, applying its own precedent and Pennsylvania case law concluded that there was some

validity to Mirarchi's *quantum meruit* claim and remanded that issue to the lower courts for disposition.

It appears that Mirarchi does have a valid claim to quantum meruit compensation for work performed for the Thorpes from the time he took on their case up to the time he was administratively suspended ( for the second time ) from the practice of law in Pennsylvania.

**BACKGROUND**

This appears to be the final phase of former attorney Joseph Q. Mirarchi's attempt to recover a contingency fee from bankrupt clients Renee and Dale Thorpe, who terminated him after learning of his undisclosed administrative suspension from the practice of law.

Herbert McDuffy, Jr., one of the lawyers who represented the Thorpes, referred them to Joseph Mirarchi to take over from him a case they were litigating against Nationwide. Mirarchi filed an Amended Complaint on or about December 23, 2014 in response to Nationwide's Motion to Dismiss.

There was little activity on the case until from February 2015 to August 25, 2015, when Joseph Mirarchi while administratively suspended from the practice of law negotiated entered into informal settlement negotiations with Nationwide's counsel for a the sum of $324,000. Mirarchi attempted, by phone and by text message, to relay this offer to the Dale Thorpe and Roger Ashodian, Renee Thorpe's bankruptcy lawyer to get consent to accept the offer.

While preparing an application for *nunc pro tunc* approval of Mirarchi as special litigation counsel in Renee Thorpe's bankruptcy case, Ashodian's office learned that Mirarchi was suspended from the practice of law. Mirarchi refused to disclose the reasons for or the duration of his suspension to Ashodian or the Thorpes. After learning that he had been

2

administratively suspended from the practice of law from August 14, 2015 to September 16, 2015, the Thorpes terminated Mirarchi's representation by e-mail dated November 23, 2015, following up on December 31 with a signed termination letter. The Thorpes' then re-engaged McDuffy who re-entered his appearance after getting permission to do so from the two Thorpe family members creditors he represented for a portion of the Thorpe Bankruptcy. McDuffy accepted the settlement Mirarchi negotiated after failing to get Nationwide to increase the settlement amount. The proceeds of the settlement minus the disputed fee, were applied money owed to Lititz Properties, LLC ("Lititz") and BB&T Corporation ("BB&T")). As a result, Litiz and BB&T discharged the remainder of Renee Thorpe's financial liabilities. This agreement saved the Thorpe's home in Jamison PA from a forced sale.

**Relevant Facts from the Record**

1. On November 7, 2014, McDuffy filed a complaint on the Thorpes' behalf in the C.P. Action. (Id.).
2. On November 26, 2014 Nationwide filed preliminary objections to the complaint. (Id.).
3.. At no time between February 2014 and February 2015 did the Debtor seek Mr. McDuffy's appointment as special counsel.
4.. In late November 2014, a mutual acquaintance of the Thorpes and Mr. Mirarchi contacted Mr. Mirarchi regarding the possibility of Mirarchi substituting in for Mr. McDuffy as counsel for the Thorpes in the C.P. Action. (8/3/16 N.T. at 15-16, 125-27; 8/8/16 N.T. at 92-93, 135).
5. At that time, Mr. Mirarchi was an attorney licensed to practice law in Pennsylvania. (8/3/16 N.T. at 13).
6. On November 29, 2014, Mr. Mirarchi met with Mr. Thorpe at the Farm. (8/3/16 N.T. at 12; Ex M-4)
7. Mr. McDuffy also met with Mr. Mirarchi and then recommended that the Thorpes retain Mr. Mirarchi to replace him as their attorney in the C.P. Action. (8/19/16 N.T. at 13-14).
8. On December 15, 2014, Mr. McDuffy hand delivered his file on the C.P. Action to

3

Mirarchi.  (8/3/16 N.T. at 50).

9. Through a series of text messages exchanged by Mr. Thorpe and Mr. Mirarchi, the Thorpes engaged Mirarchi to represent them in the C.P. Action.  (Ex. M-6 at 3).

10. Prior to receiving a signed fee agreement, but considering himself "retained," (8/3/16 N.T. at 131; see also 8/8/16 N.T. at 164-65; Ex. M-6 at 3), and facing what he considered to be a filing deadline in the C.P. Action, Mirarchi filed an Amended Complaint in the C.P. Court on December 23, 2014.  (8/3/16 N.T. at 50, 57-58, 62, 131, 140).

11. On February 13, 2014, also prior to receiving a signed fee agreement, Mirarchi filed a response to Nationwide's preliminary objections. (Ex. M-2).[11]

12.  On March 4, 2015, the Thorpes signed a 35% contingency fee agreement with  Mirarchi. (Ex. M-13; 8/3/16N.T. at 18-19).

13.  On or about February 23, 2015, Nationwide's attorney communicated to Mr. Mirarchi its agreement that the filing of the Amended Complaint mooted Nationwide's preliminary objections ( 8/3/16 N.T. at 131)

14. On April 2, 2015, Mr. Mirarchi advised Mr. Thorpe that he had granted Nationwide an extension of time to file an Answer to the Amended Complaint and that, thereafter, he would conduct discovery, including interrogatories and depositions.  (Ex. M-14).

15. On April 29, 2015, Nationwide filed an Answer to the Amended Complaint in the C.P. Action.  (Ex. M-2).

15. Neither side in the C.P. Action conducted any discovery between April 2015 and August 25, 2015 ( 8/3/16 N.T. at 131-32)

17. By order dated July 15, 2015, the Supreme Court of Pennsylvania placed Mr. Mirarchi on administrative suspension effective August 14, 2015  due to his failure to comply with his continuing legal education ("CLE") obligations. (Exs. M-38, M-42).

18.  .Mr. Mirarchi learned of the suspension of his license on August 13 or 14, 2015, after receiving an e-mail from the Pennsylvania Disciplinary Board.  (8/3/16 N.T. at 110-11,113).

19. Once Mirarchi learned of his administrative suspension, he promptly fulfilled his CLE obligations.  (Id. at 111).

20. Mirarchi was not reinstated to active status as an attorney until September 16, 2015.  (See Ex M-42)

4

21. At no time during his administrative suspension did Mr. Mirarchi inform the Thorpes of the suspension. (8/3/16 N.T. at 113).

22. On August 25, 2015, while his law license was suspended, Mirarchi engaged in a telephonic settlement negotiation with Nationwide's counsel. (8/3/16 N.T. at 23-24, 132).

23. The August 25, 2015 negotiation was the first settlement discussion after Nationwide filed its Answer to the Amended Complaint. (Id. at 84).

24. In that negotiation, which involved an initial offer by Nationwide and a counteroffer by Mr. Mirarchi, Nationwide made a settlement offer of $324,729.30 ("the Nationwide Settlement Offer"). (Id. at 24; 8/8/16 N.T. at 40).

25. Mr. Mirarchi communicated the Nationwide Settlement Offer to Mr. Thorpe by text and e- mail. (8/3/16 N.T. at 24-25; 8/8/16 N.T. at 94; Ex. M-6, at 13-14).

26. At that time, Mr. Mirarchi was aware that a mortgage holder (i.e., Lititz) might lay claim to    The potential settlement proceeds ( 8/8/16 N.T. at 95-96; Ex, M-6; at 13.

27. In response, Mr. Thorpe advised Mr. Mirarchi that the Nationwide Settlement Offer would have to be discussed with the Debtor's bankruptcy counsel. (8/8/16 N.T. at 95).

28. As a result, over the next few weeks, Mr. Mirarchi communicated with Mr. Thorpe and The Debtor's bankruptcy counsel's office by numerous e-mails and texts seeking:

    a. express authority from the Thorpes to accept the Nationwide Settlement Offer;

    b. the Debtor's filing of a motion appointing him as special counsel to the Debtor;

    c. to allay the Thorpes' concern that they might not receive any of the settlement proceeds due to Lititz's claim against the proceeds.

(8/3/16 N.T. at 102-03, 105-06; Ex. M-6, at 13-17; Exs. M-17, M-18; Ex. M-20, at 1; Exs. M-24; M-26; M-27; M-29).

29. Starting in mid-September 2015, both Mr. Thorpe and the Debtor's bankruptcy counsel requested further details regarding administrative suspension, including the specific dates of the suspension. (Exs. M-21, M-22, M-23).

30. Mirarchi'sd response was evasive on the subject of his suspension. Rather it;

    a. urged the Thorpes to go forward with the Nationwide settlement,

    b. assured the Thorpes and their counsel that the administrative suspension was a non–issue;

    c. responded to complaints recently raised by Mr. Thorpe regarding lack of

5

      communication regarding the Insurance Litigation and deficiencies in the content of the Amedned Complant drafted by Mr. Mirarchi. (Ex. M-24)

31. .By e-mail dated November 23, 2015, Mr. Thorpe advised Mr. Mirarchi that the Thorpes were terminating Mirarchi as their attorney in the C.P. Action. (See Ex. M-31).

32. .On December 31, 2015, Mr. Mirarchi received a signed copy of the e-mail terminating him as counsel. (See Ex. M-34).

33. The Thorpes' discharge of Mr. Mirarchi as counsel was based, in significant part, on his administrative suspension, his failure to advise them of the suspension and what they considered to be his inadequate responses to their inquiries regarding the suspension. (8/8/16 N.T. at 155, 180-81).[21]

34. At no time during the period in which Mirarchi represented the Thorpes in the Insurance Litigation did the Thorpes agree to accept the Nationwide Settlement Offer

35. On or about January 4, 2016, the Thorpes again engaged Mr. McDuffy to represent them in the C.P. Action. (Ex. D-2).

36. McDuffy re-entered his appearance in the C.P. Action on January 27, 2016. (Ex. M-2).

37. Mr. McDuffy accepted the Nationwide Settlement Offer on the Thorpes' behalf. (8/19/16 N.T. at 26, 43-44).

38. Although they considered the settlement offer to be too low, the Thorpes nevertheless accepted it in order to reach a settlement with Lititz that would protect their residential property. (Id. at 149, 151, 189-91).

39. On June 23, 2016, by praecipe, the C.P. Action was marked "settled, discontinued and ended." (Ex. M-2).

**Discussion – Legal Standard and determination of quantum meruit award**

    A recent decision by the Pennsylvania Supreme Court in the case of Meyer Darragh,Buckler & Eck PL.L.C et.al. v Law Firm of Malone Middleman, P.C. et.al. *179 A 3d 1093, (2018)* matter is instructive and seems to echo the Third Circuit Court of Appeals case cited in its Opinion memorandum on the issue of *quantum meruit* in the above captioned case.

    In that case, a predecessor law firm brought breach of contract and *quantum meruit*

6

action seeking apportionment of attorney's fees against successor law firm, which had ultimately obtained settlement on client's behalf in wrongful death action. The litigation trail started in the Allegheny County Court of Common Pleas and ended in the Pennsylvania Supreme Court. The Supreme Couert ruled that the contract claim was not viable but the quantum meruit claim had merit. In so ruling it reaffirmed the standard for quantum meruit claims saying;  *"A claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate: (1) the benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value"*. Id at 1102. *"Whether the doctrine of quantum meruit applies to allow recovery is a factual question in which the focus is not on what the parties intended, but rather on whether a party has been unjustly enriched."* Id at 1102 . Further, the court said " *In order to determine whether the defendant in a quantum meruit action has been unjustly enriched such that the plaintiff is entitled to damages, we consider whether the plaintiff has conferred a benefit on the defendant which has been realized and retained*". Id. at 1103.

     The record in the above captioned matter is clear. Despite his post August 14, 2015 unlawful conduct, former Attorney Mirarchi, conferred a benefit in that he helped set the stage for them to get a settlement from Nationwide Insurance that helped save their home by; drafting and filing an Amended Complaint (that the Thorpes later disagreed with but kept the case alive), by reviewing subsequent defense filings and by negotiating the terms of settlement that was finalized by subsequent counsel.

     Despite the benefit conferred on the Thorpes ,Mirarchi's quantum meruit claims should be limited to the period of time when he worked for the Thorpes in his capacity as a licensed attorney. Negotiating a settlement while under administrative suspension is a misdemeanor crime of the Third Degree in Pennsylvania. It seems logical and obvious that to allow Mirarchi fees for conferring a benefit by way his undisclosed criminal conduct would be to sanction such conduct and defeat the purpose for the laws and rules

that govern the practice of law. Neither the Bar nor the Bench sanction work product criminality by attorneys. The ends do not justify criminal means. The Court should order a reasonable hourly rate for the work performed from December 15, 2014 to August 14, 2015. No lawful legal work was done by Mirarchi after that point in time. Whatever fees are granted should come from the contingency fee currently held in escrow before the balance is released by the Court.

**Conclusion**

Former Attorney Mirarchi should be granted a fee pursuant to the doctrine of quantum meruit for the period of time he lawfully practiced law on behalf of the Thorpes in their matter against Nationwide Insurance Company. The Court should determine and affix a reasonable rate for a reasonable number of hours he worked between December 15, 2014 and August 14 2015 as reflected in the record.

RESPECTFULLY SUBMITTED,

/S/ HERBERT MCDUFFY, JR
HERBERT MCDUFFY, JR.,ESQUIRE
200 CAMPBELL DRIVE
SUITE 103E
WILLINGBORO, NJ 08046
856 505 8706
610 453 4015
866 610 4503 (fax)
hmcduffy@aol.com

## CERTIFICATE OF SERVICE

    I, Herbert McDuffy, Jr. Esquire, hereby certify that the foregoing memorandum of law was filed electronically and will be served on defendants in a manner consistent with the Federal Rules of Civil Procedure.

Dated:   April 9, 2019                         /s/ Herbert McDuffy, Jr.
                                                     HERBERT MCDUFFY, JR.